IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES A. ALLEN, ) | |
| Plaintiff, ) | Case No. 15 CV 07702 |
| ) | HON. CHARLES P. KOCORAS |
| vs. ) | Judge Presiding |
| ) | |
| CITY OF CHICAGO, et. al, ) | |
| Defendants. ) | |

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

Defendants, CITY OF CHICAGO, KENHASA MARTIN, ANGELA B. COWART-SMITH, STEVEN A. DAVIS, MARK H. DAVIS, ALLEN SMITH, ERIC MEDINA, STANLEY L. WILLIAMS, DANIEL CORRAL, MARTIN J. TANNEHILL, FRANCIS J. HESLIN, ROBERT D. WATKINS, ERIC L. JOHNSON, ROY A. BOFFO, F.J. MARCELLINO, and VANCE E. BONNER, by and through their attorneys, BORKAN & SCAHILL, LTD., and for their Statement of Material Facts pursuant to Local Rule 56.1, state as follows:

**DESCRIPTION OF PARTIES**

1. Plaintiff, CHARLES ALLEN (referred to hereinafter as "Plaintiff"), is an individual residing in City of the Chicago. The individual Defendants, KENHASA MARTIN, ANGELA B. COWART-SMITH, STEVEN A. DAVIS, MARK H. DAVIS, ALLEN SMITH, ERIC MEDINA, STANLEY L. WILLIAMS, DANIEL CORRAL, MARTIN J. TANNEHILL, FRANCIS J. HESLIN, ROBERT D. WATKINS, ERIC L. JOHNSON, ROY A. BOFFO, FRED J. MARCELLINO, and VANCE E. BONNER (referred to collectively hereinafter as the Defendants or individually as "Officer Martin", "Officer Cowart-Smith", "Officer S. Davis", "Officer Medina", "Officer Corral", "Evidence Technician M. Davis", "Detention Aide Smith", "Detention Aide Johnson", "Sergeant Williams", "Lieutenant Tannehill", "Detective Heslin", "Sergeant Boffo",

1

"Officer Watkins", "Sergeant Marcellino" and "Sergeant Bonner") were at all relevant times employed by Defendant City of Chicago, a municipal corporation. Exhibit 1, Dkt. 85.

## FACTS ESTABLISHING JURISDICTION AND VENUE

2. Plaintiff brought this action pursuant to 28 U.S.C. § 1331 and § 1367 regarding alleged acts and omissions occurring in the City of Chicago and, thus, venue and jurisdiction of this Court are proper. *See* Exhibit 2, Dkt. 54.

## EVENTS OF JULY 21 and 22, 2014

3. This incident started in response to a 9-1-1 call made on July 21, 2014 for a person needing help at 8101 S. Maryland. Exhibit 3, FCRL 172-78 at p. FCRL 172; Exhibit 4, Hansen Affidavit at ¶¶6, 7; Exhibit 5, Deposition of S. Davis at p. 120:21-25. This call was received by the Office of Emergency Management & Communication ("OEMC") at 22:28:26. Ex. 3; Ex. 4 at ¶¶ 5, 9.

4. OEMC dispatched Beat 632, Officer S. Davis, to respond to the scene at 23:00:02. Exhibit 6, FCRL 46-65 at p. FCRL 56; Ex. 3 at p. FCRL 172; Exhibit 7, Audio recording BS320 at 0:16[1]; Ex. 4 at ¶10.

5. Dispatch then called on the radio requesting a unit near 8101 S. Maryland available to back up Beat 632 as this was a domestic disturbance and Officer S. Davis was without a partner that evening. Ex. 7 at 1:02; Ex. 5 at 121:9-20.

6. Officer Cowart-Smith responded that Beat 642 was available. Ex. 7 at 1:14; Exhibit 8, Affidavit of Angela Cowart-Smith at ¶3.

7. Beat X642, Officers Cowart-Smith and Kenhasa Martin, were then assigned as the assist by dispatch at 23:00:19. Ex. 3 at p. FCRL 172; Ex. 4 at ¶10; Ex. 5 at p. 128:22; Ex. 6 at p.

---

[1] BS 320 is the production of an audio recording of the Chicago Police Department and OEMC Zone Radio from July 21, 2014 between 22:59:00-23:59:00. *See* Ex. 3. This Zone includes Chicago Police Districts 4 and 6. *Id.* Plaintiff was arrested in the 6th District. *See* Ex. 6 at p. FCRL 49. Pinpoint citations reflect the elapsed time into the recording.

FCRL 54. Beat X642 acknowledged the assignment at 23:00:22. Ex. 3 at p. FCRL 172; Ex. 4 at ¶11; Exhibit 9, Deposition of Cowart-Smith at p. 16:14-16.

8. Officer S. Davis calls in on the radio a change of location at approximately 23:30:26, notifying dispatch that the Officers are going to apartment 203. Ex. 7 at 4:10; Ex. 3 at p. FCRL 172; Ex. 4 at ¶13; Exhibit 10, S. Davis Affidavit at ¶3.

9. Sergeant Stanley Williams, Beat 610, heard the calls on the radio and responded to the scene as the Beat Sergeant. Ex. 5 at FCRL 59; Exhibit 11, Williams' Affidavit at ¶¶2, 3.

10. Plaintiff was arrested on July 21, 2014 at 23:32. Ex. 6 at p. FCRL 103; Ex. 5 at p. 119:4-10.

11. Plaintiff claims that Defendant Officers used force while he was in apartment 203 including a taser and OC spray. Exhibit 12, Deposition of Plaintiff at p. 103:5-113:3.[2] At some point in the apartment, Plaintiff "passed out."[3] *Id.* at p. 113:1-6; Ex. 1.

12. Plaintiff has no recollection of anything that occurred between "passing out" in apartment 203 and when he woke up in the police station the next morning. Ex. 12 at p. 113:5-13.

13. At approximately 23:39:30 Officer Cowart-Smith called over the radio that the officers needed "a wagon" at the scene. Ex. 7 at 40:30; Ex. 8 at ¶4. Then, at approximately 23:40:05, Officer Cowart-Smith called out over the air that she has an "emergency." Ex. 7 at 41:05; Ex. 8 at ¶5. At 23:40:12 Officer Cowart-Smith stated: "We have a combative offender over here. We need a wagon. We need an ambulance." Ex. 7 at 41:12; Ex. 8 at ¶6. Then again, at approximately 23:41:10, Officer Cowart-Smith stated "we need an ambulance, get it over here. We need the wagon and an ambulance for this offender." Ex. 7 at 42:10; Ex. 8 at ¶7.

---

[2] Plaintiff did not alleged that OC spray or pepper spray were used in his Complaint, only at his deposition. *See* Ex. 1; Ex. 10 at p. 103:5-113:3.
[3] Defendants' and eye witness testimony regarding how and when force was used is substantially different from Plaintiff's description. However, for purposes of this Motion, Defendants will not outline those distinctions as they are not relevant for the Court's evaluation of Defendants' Motion.

14. Dispatch responded and asked Beat 642 what kind of injuries they had on scene. Ex. 7 at 42:40; Ex. 8 at ¶8. Officer Cowart-Smith responded at 23:41:50: "Taser, he got tased." Ex. 7 at 42:50; Ex. 8 at ¶9.

15. Emergency Medical Services, Ambulance 24, was dispatched to the scene at 23:42:28. Exhibit 13, FCRL 171; Exhibit 14, Deposition of Butler at pp. 15:18-21; 21:7-12. The dispatch indicated "TASER#". Ex. 13; Ex. 14 at p. 13:9-14. Ambulance A24 responded and on scene at 23:46:51. Ex. 13; Ex. 14 at p. 23:6-21.

16. While on scene, paramedics removed the taser prongs from Plaintiff's skin. Ex. 9 at p. 71:7-8; Exhibit 15 Martin Affidavit at ¶5.

17. An Evidence Technician was requested at 23:59. Ex. 6 at p. FCRL 58.

18. At 00:02:07, dispatch assigned Beat 631R, Officers Medina and Corral, to respond to the scene. Ex. 3 at p. FCRL 172; Ex. 4 at ¶14

19. The Ambulance returned to being "in service" on July 22, 2014 at 00:03:25. Ex. 13; Ex. 14 at p. 24:3-9. "In service" means that the paramedics have completed responding to the specific call and can be assigned a new job. Ex. 14 at p. 24:6-9

20. Officers S. Davis, Cowart-Smith, Corral, Martin, and Sergeant Williams observed paramedic personnel on the scene. Ex. 5 at p. 186:13-24; Ex. 9 at pp. 70:24-71:8, 73:11-15; Ex. 11 at ¶¶4, 5; Ex. 15 at ¶3; Exhibit 16, Martin Deposition at pp. 12:13-16, 13:5-10, 14:4-9.

21. Officers recall seeing the paramedics interact with Plaintiff while on the scene, it was their understanding that the paramedics were rendering treatment. Ex. 9 at p. 40:10-18; Ex. 11 at ¶¶4, 5; Ex. 15 at ¶3; Ex. 16 at pp. 12:13-16, 13:5-10, 14:4-9; *see* Ex. 17, Affidavit of Eric Medina at ¶3; Exhibit 30 Affidavit of Daniel Corral at ¶3; Ex. 6 at p. FCRL 48;

22. Evidence Technician M. Davis, arrived on scene at 00:17:01 on July 22, 2014. Ex. 3 at FCRL 177; Exhibit 18, Affidavit of M. Davis at ¶3. Evidence Technician M. Davis took

4

photographs of the domestic battery victim, Lakevia Green and apartment 203. Ex. 3 at p. FCRL 177; Ex. 18 at ¶3. Evidence Technician M. Davis had no interaction with Plaintiff. Ex. 18 at ¶4.

23. Plaintiff was transported to the 6th District by Beat 631R on July 22, 2014 at 00:38. FCRL 109; Ex. 4s Affidavit at ¶15; Ex. 9 at p. 60:4-5.

24. After transport, Officer S. Davis, Officer Medina, Officer Corral, and Sergeant Williams did not interact with Plaintiff any further on July 22, 2014. Ex. 5 at p. 193:12-194:4; Ex. 11 at ¶7; Ex. 17 at ¶4; Ex. 30 at ¶4.

25. At 00:53, a notification was sent to Detective Area – South. FCRL 000058. Detective Francis Heslin, an SVU Detective in Area South, was assigned as an investigator/detective as the charges included possible felony domestic battery. Ex. 6 at pp. FCRL 56, 60-65; Exhibit 19, Affidavit of Francis Heslin at ¶2. Upon assignment, Detective Heslin went to the scene to interview witnesses and the victim. Ex. 6 at p. FCRL 64; Ex. 19 at ¶¶2, 3, 4.

26. At 00:58:35, Beat 631R, Officers Medina and Corral, utilized their Personal Mobile Data Terminal ("PMDT") to indicate that they were "Clear" of this assignment. Ex. 3 at p. FCRL 172; Ex. 4 at ¶16.

27. While at the station, Officers Martin and S. Davis completed Tactical Response Reports ("TRR") documenting their use of force. Exhibit 20, FCRL 000215-000222; Ex. 10 at at ¶5; Ex. 15 at ¶¶6, 7; Ex. 16 at p. 16:3-21.

28. Officer S. Davis submitted his TRR at 01:17:18 on July 22, 2014. Ex. 20 at FCRL 216; Ex. 10 at ¶¶5, 6. It was reviewed by Sgt. Williams at 01:28:15. Ex. 20 at p. FCRL 216; Ex. 11 at ¶6.

29. At 1:45 a.m., Officer S. Davis submitted the taser cartridges with discharged probes to be inventoried. Exhibit 21, FCRL 97-98; Ex. 10 at ¶7.

30. Officer Martin submitted his TRR at 02:04:37 on July 22, 2014. Ex. 20 at p. FCRL 219; Ex. 15 at ¶¶6, 7. It was reviewed by Sgt. Williams at 02:11:24. Ex. 20 at p. FCRL 219; Ex. 11 at ¶6.

31. Lieutenant Tannehill completed the "Lieutenant or above/OCIC Review" for S. Davis's and Martin's TRRs. Ex. 20 at pp. FCRL 218, FCRL 222; Exhibit 22, Affidavit of Tannehill at ¶2. These interviews occurred at 01:23:06 and 01:49:17 on July 22, 2014. Ex. 20 at pp. FCRL 218, FCRL 222. After Mirandizing Plaintiff, Tannehill interviewed Plaintiff. Ex. 20 at pp. FCRL 218, FCRL 222; Ex. 22 at ¶4. Plaintiff admitted to "struggling with the arresting officers further stating that he should have done more." Ex. 20 at pp. FCRL 218, FCRL 222; Ex. 22 at ¶4. Tannehill noted that "Allen was highly agitated during the interview with reporting Lieutenant, and appears to be in a highly intoxicated state." Ex. 20 at pp. FCRL 218, FCRL 222; Ex. 22 at ¶5. These interviews occurred at 01:23:06 and 01:49:17 on July 22, 2014.

32. When Lieutenant Tannehill interviewed Plaintiff, Plaintiff never requested medical treatment or assistance. Ex. 22 at ¶6. Lieutenant Tannehill had no further interactions with Plaintiff. *Id.* at ¶9.

33. Beat 632, Officer S. Davis, was reported as "Clear" from this assignment at 2:20:43. Ex. 3 at p. FCRL 173; Ex. 4 at ¶17.

34. Officer Cowart-Smith was the Attesting Officer and drafted the arrest report with Officer Martin. Ex. 6 at p. FCRL 54; Ex. 9 at pp. 54:21-55:12.

35. Officer Cowart-Smith reported that Plaintiff was "tased various times. the first tase was ineffective. the subject was then subdued. the subject was treated by cpd ems#24." Ex. 6 at p. FCRL 54; *see* Ex. 9 at pp. 54:21-55:12.

36. Officer Cowart-Smith submitted the arrest report at 3:17 a.m. on July 22, 2014. Ex. 6 at p. FCRL 54.

37. Sergeant Fred Marcellino reviewed the submitted arrest report approved probable cause for the charges stated on July 22, 2014 at 03:20. *Id.*; Exhibit 23, Affidavit of Fred Marcellino at ¶¶2, 3; Ex. 9 at p. 58:6-13.

38. Sergeant Marcellino never observed or spoke to Plaintiff. Ex. 23 at ¶4.

39. Beat X642, Officers Cowart-Smith and Martin, were reported as "Clear" from this assignment at 3:40:14. Ex. 3 at p. FCRL 172; Ex. 4 at ¶18.

40. Defendant Sergeant Boffo was working as a sector sergeant in the 6th District starting at 5:00 am on July 22, 2014. Exhibit 24, Affidavit of Roy Boffo at ¶¶2, 3.

41. Officer Watkins was the lockup keeper in the 6th District on July 22, 2014 starting at 5:30 a.m. on July 22, 2014. Ex. 6 at p. FCRL 56; Exhibit 25, Deposition of Watkins at pp. 38:12-21, 74:15-16.

42. Detention Aide Johnson and Detention Aide Smith were working in the 6th District lockup on July 22, 2014 starting at 6:00 a.m. Ex. 6 at p. FCRL 56; Exhibit 26, Deposition of Johnson at p. 55:2-5.

43. Plaintiff recalls waking up in a holding cell the morning of July 22, 2014. Ex. 12 p. 115:24-116:6.

44. That morning, lockup personnel let Plaintiff wash his eyes out with water. *Id.* at p. 156:18-24.

45. After being woken up, Plaintiff spoke with the lockup personnel who asked him why he had not been fingerprinted. *Id.* at p. 117:9-12.

46. While being fingerprinted, Plaintiff told the lockup personnel who was fingerprinting him that his chest and knee hurt. *Id.* at pp. 117:13-14; 119:8-20.

47. The lockup personnel responded by asked Plaintiff what was wrong with his chest. *Id.* at pp. 117:15-17; 119:14-17.

48. Plaintiff responded that he had been tasered and showed the lockup keeper where by lifting up his shirt. *Id.* at pp. 117:15-17; 119:17-19.

49. Plaintiff was fingerprinted a 07:58 by Allen Smith. Ex. 6 at pp. FCRL 55-56.

50. The lockup personnel then looked at the police report and said "they don't say nothing about you being tased or going to the hospital" and instructed Plaintiff to "go sit on that wall." Ex. 10 at pp. 117:17-20; 119:20-23.

51. Plaintiff observed the lockup personnel get on the phone and said "man, they were supposed to take you to the hospital last night. They don't say nothing about you being tased." *Id.* at p. 118:21-22.

52. Plaintiff then waited about 15 minutes for a "white shirt" to come back to lockup. *Id.* at p. 120:8-9.

53. The "white shirt captain, whoever it was, came back there. They immediately sent me to the hospital." *Id.* at pp. 117:20-22; 119:23-24. Plaintiff observed the "white shirt" as he "went through the paperwork" and stated "Not on my watch." *Id.* at p. 119:23-24. About 15 minutes later Plaintiff was being transported to the hospital. *Id.* at p. 120:1-3.

54. Plaintiff recalls that the "white shirt" was a white male. *Id.* at p. 121:16-18.

55. Sergeant Boffo was the supervisor or "white shirt" who spoke to Plaintiff about his reported injuries and sent him to the hospital on July 22, 2014. Ex. 24 at ¶5.

56. Prior to that interaction, Sergeant Boffo had not spoken to or seen Plaintiff and had no information to suggest that Plaintiff was injured. *Id.* ¶4.

57. Plaintiff arrived at Little Company of Mary Hospital at approximately 10:46 a.m. Exhibit 27, Deposition of Dr. Lewis at p. 43:15-22.

58. Plaintiff saw the triage nurse at 11:10 a.m. *Id.* at p. 43:15-22. After evaluation, Plaintiff's vital signs were found to be normal. *Id.* at p. 50:8-9. Triage designated Plaintiff as "Fast

8

Track" meaning that his injuries are not critical and were assessed to be non-urgent, or that he had a simple injury akin to a "sore throat, sprained ankle, injury to their hand." *Id.* at p. 49:23-50:11.

59. Plaintiff was seen by Dr. Barry Lewis in the emergency room at 12:00 p.m. *Id.* at p. 43:15-22.

60. Plaintiff reported that he had been tasered and that he was experiencing numbness in his left hand and fingers. *Id.* at pp. 25:24-26:2. Plaintiff also explained that in March 2014 he was stabbed in his left forearm and he has had pain and numbness in his left hand ever since. *Id.* at p. 26:1-3. Based on that report, Dr. Lewis found that Plaintiff had a "chronic pain syndrome or injury" after being stabbed in March, 2014, but that Plaintiff was now reporting more pain and numbness in his fingers. *Id.* at pp. 31:23-32:22.

61. Plaintiff did not report to triage or Dr. Lewis that he had been sprayed with pepper spray by the officers. Ex. 12 at p. 124:13-17. Plaintiff did not seek medical treatment for injuries he sustained to his chin beyond a Band-Aid. *Id.* at p. 155:2-12.

62. Plaintiff reported that was not experiencing chest pain or palpitations. Ex. 27 at p. 27:13-15. He had no swollen or painful joints. *Id.* at p. 27:16-18. His examination revealed no tenderness, or limitations in his range of motion and his strength was also normal. *Id.* at p. 28:14-17. Plaintiff had no swelling, tenderness or deformities in his extremities. *Id.* at p. 28:23-29:1. None of these findings indicated that Plaintiff had an injury. *Id.* at pp. 28:20-22, 29:6-7, 30:7-8, 31:8-10.

63. Dr. Lewis was unable to opine that the numbness that Plaintiff reported in his left hand was a result of being tasered on July 21, 2014. *Id.* at p. 26:15-27:2. There was nothing in Dr. Lewis's examination "that showed the tasing made [the pain and numbness] worse." *Id.* at p. 34:2-3. Dr. Lewis has no opinion that Plaintiff had any injuries specifically related to being tasered. *Id.* at p. 37: 14-16.

64. Dr. Lewis recommended that Plaintiff take Motrin, an over the counter pain medication, apply ice, and see his primary care physician. *Id.* at pp. 22:2-4, 48: 10-17.

65. If Dr. Lewis felt that Plaintiff needed further testing he would have ordered that, but no additional testing was ordered. *Id.* at p. 36:13-20.

66. He was discharged "fit for confinement" at approximately 12:13 p.m. *Id.* at pp. 36:8-9. 38:3-4. Upon discharge he was stable and in "good" condition. *Id.* at p. 38:3-9.

67. After leaving the hospital, the only other treatment Plaintiff sought related to his alleged injuries were Band-Aids, over the counter pain medication, and ointment. Ex. 12 at p. 140:12-142:12. He has no lasting injuries related to the use of OC spray. *Id.* at p. 157: 5-16.

68. After completing his on scene investigation, Detective Heslin went to the 6th District where he learned that Plaintiff had been transported to Little Company of Mary Hospital Ex. 6 at p. FCRL 64; Ex. 19 at ¶¶5, 6. Detective Heslin proceeded to the hospital where he first came in contact with Plaintiff. Ex. 6 at p. FCRL 64; Ex. 9 at ¶¶7, 8; Ex. 12 at pp. 127:6-17, 128:17-19.

69. As the Desk Sergeant, Sergeant Bonner approved final charges on July 22, 2014 at 16:03. Ex. 6 at p. FCRL 56; Exhibit 28, Affidavit of Vance Affidavit at ¶2.

70. Prior to approving final charges, Sergeant Bonner had no interaction with Plaintiff. Ex. 28 at ¶3.

71. Plaintiff filed his Second Amended Complaint on July 20, 2016 alleging the following claims: (I) Excessive Force and Failure to Intervene; (II) State Law Battery; (III) State Law Intentional Infliction of Emotional Distress; (IV) Failure to Provide Medical Care; (V) Respondeat Superior; and (VI) Indemnification. Ex. 1. Subsequently, Plaintiff voluntarily dismissed Counts II and III. Exhibit 29, Dkt. 99. This Court dismissed Count V. *Id.*

72. Of the remaining claims, Count I is only alleged against Defendants Steven Davis, Stanley Williams, Angela Cowart-Smith, Kenhasa Martin, Eric Medina, and Daniel Corral. Ex. 1. Count IV is alleged against all individually named Defendants. *Id.* Count VI is only alleged against the City of Chicago. *Id.*

| | |
|---|---|
| BORKAN & SCAHILL, LTD. | Respectfully submitted, |
| 20 South Clark Street, Suite 1700 | BORKAN & SCAHILL, LTD. |
| Chicago, Illinois 60603 | |
| 312-580-1030 | By: /s/ Whitney N. Hutchinson |
| | Whitney N. Hutchinson |