IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CHARLES ALLEN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 15-CV-07702 |
| | ) | |
| v. | ) | |
| | ) | Judge Charles P. Kocoras |
| CITY OF CHICAGO, KENHASA | ) | |
| MARTIN et. al. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, by counsel, submits the following memorandum of law in opposition to Defendants' Motion for Partial Summary Judgment:

## LEGAL STANDARD

Defendants are entitled to summary judgment only if there is no genuine issue of material fact and if they are entitled to judgment as a matter of law. *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1103-04 (7th Cir. 2008). "In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party." *Id.* To overcome a motion for summary judgment, the non-moving party need only offer enough evidence such that a "jury could reasonably find for the nonmoving party." *Walker v. Sheahan,* 526 F.3d 973, 977 (7th Cir. 2008).

## ARGUMENT

### A. The Defendants have proffered sham affidavits in order to bolster a claim for their motion for summary judgment

"It is well established that a party cannot create a genuine issue of material fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony. *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1169 (7th Cir. 1996). "We are mindful that, in light of the jury's role in resolving questions of credibility, other circuits have cautioned that this rule ought to be applied with great caution." *Id.* The court explained by quoting another circuit:

"The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended. To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth. *Id.* Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact." *Bank of Illinois*, 75 F.3d at 1170.

As a result of balancing these competing considerations, the Seventh Circuit has allowed a party to avoid summary judgment through a statement that contradicts an earlier sworn statement in a limited number of circumstances. *Id.* at 1171. A subsequent affidavit may be allowed to clarify ambiguous or confusing testimony. *Id.* A contradictory supplemental

affidavit is also permissible if it is based on newly discovered evidence. *Id.* at 1172. In *Adelman-Tremblay v. Jewel Companies, Inc.* 859 F.2d 517, 520 (7th Cir. 1988), the Court said: "Because there was no newly discovered evidence and the plaintiff had not lacked access to material facts-two compelling reasons for which courts will allow plaintiffs to contradict prior sworn testimony to avoid summary judgment-the district court held that Dr. Hogan's supplemental affidavit could not be used to create a factual issue."

The Defendants have presented thirteen affidavits to support their Partial Motion for Summary Judgment. Out of those thirteen, three were the reporting officers, Kenhasa Martin, Steven Davis and Angela Cowart-Smith who already were deposed regarding the issues presented in their affidavits. This City is directly attempting to contradict their testimony, namely, that a*nyone* actually saw Mr. Allen get treated by emergency ambulance personnel when the deposition testimony and the ambulance personnel report and testimony state the opposite. In fact the ambulance report (Exhibit 13 submitted by the Defendants) states the complete opposite as it states "no EMS needed, handled by CPD Beat 631R". In fact, for the City to argue that the ambulance personnel pulled out the taser prongs is a complete fabrication, and at a minimum, evidence of a material fact.

Two Defendant Officer affidavits state as follows: 1) "…it was my understanding that the paramedics had already seen Plaintiff" upon responding to the scene (Eric Medina affidavit-Ex. 7), and 2) "it was my understanding that the paramedics has already treated Plaintiff" upon responding to the scene (Daniel Corral affidavit-Ex. 30). It is interesting to note that none of these statements contained within the affidavits demonstrates personal knowledge: none of them aver they "saw" anything nor does it state they spoke to anyone who saw Plaintiff Allen get

3

treated by ambulance personnel at the scene. Both of these affidavits provide no personal knowledge of anything and should be discarded for any summary judgment analysis.

Officer Kenhasa Martin's affidavit states that he "saw paramedics respond to the scene and interact with Plaintiff", that it "was his understanding that the paramedics were providing Plaintiff treatment because he had been tasered" and the "paramedics removed the taser probes". (Kenhasa Martin affidavit-Ex. 15). Again, in one part of his affidavit he uses the word "saw" and then later states "paramedics removed the taser probes." He does not aver that he saw this occur. This distinction is important especially since he has already been deposed and even in his sham affidavit he cannot state definitely he saw this.

In fact, Office Steven Davis testified that in regards to the incident in question he did not know which side of the car he approached when taking Mr. Allen there in his custody, did not know which side he was on when trying to get him into the car itself, he did not know who opened the vehicle door where they tried to push him into the car, did not know if Mr. Allen kicked him or if he made contact. (See Steven Davis deposition transcript-Ex. 5, p. 163, lines 22-25, p. 164, lines 1-4).

Officer Davis does not know how Mr. Allen was taken to the ground, if Officer Kenhasa Martin took him to the ground with a takedown maneuver, and does not know if he himself tased Mr. Allen when he was already on the ground. What is consistent about Officer's Davis' testimony is its inconsistency. (See Steven Davis deposition transcript-Ex. 5, p. 183, lines 17-25, p. 184, lines 4-5, p. 184, lines).

Last, Mr. Davis lied in a criminal bench trial on September 10, 2003 when he testified and conspired with other City of Chicago Police officers to accuse a criminal defendant Michael Piazza of disorderly conduct and resisting arrest. Not only was the Defendant Michael Piazza

4

found not guilty but the Court made a finding that "the videotape paints an entirely different picture than what the police officers did testify to." What the officers testified to, including Mr. Piazza, who was later sued civilly, was that Michael Piazza resisted arrest, struggled, disobeyed police orders, talked back and the like. Absolutely none of that occurred. Mr. Davis lied under oath and also injured Mr. Piazza. (See attached September 10, 2003 trial transcript, pages 180-181, attached as Exhibit 31).

## B. PLAINTIFF MEDICAL TREATMENT CLAIMS

Plaintiff's medical treatment claim is measured by the objective reasonableness standard of the Fourth Amendment.

> Fourth Amendment claims "are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz,* 533 U.S. 194, 207 (2001). This *ex ante* test does not consider "the officer's motive or whether any injury inflicted was severe." *Lester v. City of Chicago,* 830 F.2d 706, 712 (7th Cir. 1987). This Court does not require any showing of physical injury in Eighth and Fourteenth Amendment cases. Moreover, even if plaintiff is unable to show physical injury from a violation of the Fourth Amendment, he is still entitled to seek damages for emotional distress as well as nominal damages for the violation of his rights. Either award would entitle plaintiff to also seek punitive damages for defendants' outrageous conduct in ignoring plaintiff's obvious need for medical care

### C. Fourth Amendment Reasonableness Turns on the Facts Known to the Officer when the Conduct Occurred

It is well established that Fourth Amendment claims "are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz,* 533 U.S. 194, 207 (2001). This *ex ante* test does not consider, for example, whether a police officer's unreasonable conduct turns up contraband because "a search is not to be made legal by what it turns up," *United States v. Di Re,* 332 U.S. 581, 595 (1948). The same is true for arrests: "the fact that the officer later discovers additional evidence unknown to her at the time of the arrest is irrelevant as to whether probable cause existed at the crucial time." *Smith v. Ball State Univ.,* 295 F.3d 763, 769–70 (7th Cir. 2002), quoting from *Qian v. Kautz,* 168 F.3d 949, 954 (7th Cir. 1999).

This Court first applied Fourth Amendment reasonableness to the conditions of confinement of an arrestee in *Lester v. City of Chicago,* 830 F.2d 706 (7th Cir. 1987). There, the arrestee contended that the constitutionality of the use of force by police officers should be judged by Fourth Amendment reasonableness. This Court agreed:

> If, under the totality of circumstances, a police officer unreasonably seizes a person by using excessive force, he has violated that person's Fourth Amendment rights. The objectively unreasonable seizure itself (regardless of the officer's motive or whether *any injury inflicted was severe)* crosses the constitutional threshold.

6

*Id.* at 712 (emphasis supplied). The Court reiterated that "[t]he Fourth Amendment protects against unreasonable seizures, not seizures that 'shock the conscience' or cause 'severe injuries.'" *Id.*

The Court applied the Fourth Amendment to an arrestee's claimed medical needs in *Sides v. City of Champaign,* 496 F.3d 820, 828 (7th Cir. 2007). There, the Court rejected the "deliberate indifference" standard urged by the parties.[2] *Id.* at 827-28. Instead, the Court applied the Fourth Amendment reasonableness standard and considered whether the facts known to the arresting officers "portended heat stroke or implied a need for medical attention." *Id.* at 828. Nothing in *Sides* involved whether the arrestee suffered harm because of the lack of medical attention. The Court properly focused on whether the officers' conduct was reasonable based on the facts known to them. *Id.* The Court followed *Sides* in *Williams v. Rodriguez,* 509 F.3d 392 (7th Cir. 2007). The arrestee in that case litigated his medical care claim under the Fourteenth Amendment; the Court held that "Williams has waived any Fourth Amendment claim by failing to amend or supplementis motion for summary judgment or raise the issue on appeal." *Id.* at 403. Nonetheless, the Court discussed four factors that had been "implicitly identified" in *Sides:*

> The first is that the officer be given notice of the arrestee's medical need, whether by word as occurred in

7

> *Sides,* or through observation of the arrestee's physical symptoms. [*Sides v. City of Champaign,* 496 F.3d 820, 823, 828 (7th Cir. 2007).] Second, the court in *Sides* considered the seriousness of the medical need, in that case noting that the plaintiff's complaints were not accompanied by any physical symptoms. *Id.* at 828. The severity of the medical condition under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendment. Instead, the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor—the scope of the requested treatment. In *Sides* for example, the court noted that the plaintiff was partially responsible for his lengthy detention outdoors, since he insisted that the officers not charge him at all, rather than requesting that the officers take him to the station house or write him a citation immediately. *Id.* Finally, police interests also factor into the reasonableness determination. This factor is wide-ranging in scope and can include administrative, penological, or investigatory concerns. *Sides* reflected the latter of these interests, with the court emphasizing the importance of an on- site investigation and noting that the officers did not prolong the plaintiff's detention once this investigation was completed. *Id.* Again, we offer no opinion as to whether defendants' conduct violated Williams's Fourth Amendment rights under this multi-factor analysis, but for the reasons discussed above, Williams has failed to meet the higher burden of showing that Officer Rodriguez was deliberately indifferent to an objectively serious medical condition.

*Id.* at 403. Notably absent from these four factors is any suggestion of the rule adopted by the district court, that the Fourth Amendment requires that the arrestee suffered harm because of the lack of medical attention.

The Court elevated the four *Williams* factors to a holding in *Sallenger v. City of Springfield,* 630 F.3d 499 (7th Cir. 2010). There, the

8

district court concluded on summary judgment that plaintiff could not show that "the officers' response to Sallenger's medical needs was unreasonable." *Id.* at 504. That case involved a "dangerous physical ordeal to subdue and restrain Sallenger." *Id.* The summary judgment record established "that as soon as the officers realized Sallenger was unconscious, they removed the hobble, began CPR, and summoned an ambulance." *Id.* The Court, applying the appropriate Fourth Amendment *ex ante* analysis, did not include in its reasonableness calculus that Sallenger died because of the incident. Instead, the Court focused only on the reasonableness of "the officers' response to Sallenger's medical needs." *Id.*

The Court again applied the four *Williams* factors in *Florek v. Vill. of Mundelein,* 649 F.3d 594 (7th Cir. 2011), when it observed that "[r]easonableness in light of the totality of the circumstances remains the constitutional touchstone in this realm." *Id.* at 599. The crucial question in *Florek* was whether the officers were "on notice of a serious medical condition." *Id.* at 600. The Court in *Florek* also added a fifth factor: "the sufficiency of the steps that the officers did take." *Id.* Nothing in *Florek* supports the additional factor applied by the district court in this case: whether the officers' unreasonable conduct caused "significant injury."

The Court also applied the four *Williams* factors in *Ortiz v. City of Chicago,* 656 F.3d 523 (7th Cir. 2011). *Ortiz* involved an in-custody

death, where the plaintiff sought to introduce expert medical testimony that the officers' inaction resulted in the death. In reversing the district court's order excluding the proposed expert testimony, the Court wrote that plaintiff "must present evidence sufficient to permit a jury to infer that the defendants' failure to act was a source of harm for Molina." *Id.* at 534.

The *Ortiz* court reached this conclusion by relying on Eighth and Fourteenth Amendment deliberate indifference cases. 656 F.3d at 535. At least one of these cases is inconsistent with the Supreme Court's subsequent decision in *Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010). Another of these cases, *Gayton v. McCoy,* 593 F.3d 610 (7th Cir. 2010), described as follows a pre-trial detainee's burden to show harm in violation of the Fourteenth Amendment's Due Process Clause for failure to provide medical care:

> [T]he constitutional deprivation at issue is a failure to provide Taylor with due process in the form of adequate medical treatment; the plaintiff need not prove that Nurse Hibbert's inaction necessarily led to Taylor's death, but rather that her suffering was exacerbated by Nurse Hibbert's failure to provide her with adequate medical care. *Gayton v. McCoy,* 593 F.3d 610, 625 (7th Cir. 2010). The Court applied similar reasoning in *Williams v. Liefer,* 491 F.3d 710 (7th Cir. 2007), a case where prison officers ignored the complaints of a penitentiary inmate about chest pain. In applying the appropriate Eighth Amendment standard, the Court held that the prisoner was required to present "verifying medical evidence" that a delay in treatment had caused harm. *Id.* at 715. The Court applied this "verifying medical evidence" requirement to the claim of a pre-trial detainee

10

in *Grieveson v. Anderson,* 538 F.3d 763 (7th Cir. 2008) that he had experienced unnecessary pain because of a delay in providing medical treatment.

Only one of the cases on which the Court relied in *Ortiz* for requiring an arrestee to show actual harm involved a pre-trial detainee. his health for no good reason" constituted deliberate indifference. *Id.* at 928. The Court did not include in its analysis that the arrestee died because the defendants had deprived him of his morning shot of insulin. *Id.*

The Court has not required physical injury in Eighth and Fourteenth Amendment cases. For example, in *Calhoun v. DeTella,* 319 F.3d 936 (7th Cir. 2003), a prisoner complained about a strip search; this Court reversed the grant of summary judgment, concluding that the Eighth Amendment prohibited prison guards from conducting a "strip search in a manner designed to demean and humiliate." *Id.* at 940. The Court applied this rule in *Mays v. Springborn,* 575 F.3d 643 (7th Cir. 2009), upholding a prisoner's claim that strip-searches had been "conducted in a harassing manner intended to humiliate and cause psychological pain." *Id.* at 650. The Court did not in either *Calhoun* or *Mays* require the plaintiff to prove actual humiliation or psychological pain; it was enough that the searches were "designed to demean and humiliate," as in *Calhoun,* or "intended to humiliate and cause psychological pan," as in *Mays*

The Court explained this line of authority in *Thomas v. Illinois*,

11

697 F.3d 612 (7th Cir. 2012) as applying the doctrine of "probabilistic harm" *Id.* at 615. There, the prisoner complained about "living in a small cell infested with mice and cockroaches." *Id.* The Court held that these conditions could create a "compensable hazard even if the prisoner plaintiff had been lucky and escaped disease and had had sufficient psychological fortitude (or ignorance) to avoid suffering mental distress whether from knowledge that he might become seriously ill as a consequence of the conditions in his cell or from sheer disgust." *Id.* at 615-16.

In addition to compensatory damages for "probabilistic harm," a person, like plaintiff, whose constitutional rights have been violated is entitled to damages for "a violation of rights." *Redding v. Fairman,* 717 F.2d 1105, 1119 (7th Cir. 1983) (explaining the rationale for nominal damages). This Court "long ago decided that, at a minimum, a plaintiff who proves a constitutional violation is entitled to nominal damages." *Calhoun v. DeTella,* 319 F.3d 936, 941 (7th Cir. 2003).

Moreover, plaintiff should have been permitted to show the jury that he "actually suffered distress" because of the violation of his Fourth Amendment rights. *Carey v. Piphus,* 435 U.S. 247, 263 (1978) (recognizing emotional distress damages for denial of procedural due process). *See, e g., Alston v. King,* 231 F.3d 383, 386 (7th Cir. 2000) (plaintiff "may still obtain damages for emotional distress attributable to the deficiencies in procedure if the employee can convince the trier

of fact that the distress is attributable to the denial of procedural due process itself rather than to the justified termination").

Plaintiff should have been entitled to ask the jury to compensate him for the distress he felt when defendants ignored his obvious need for medical attention. Plaintiff's distress is similar to the "credible dignitary harm" the Court recognized in *Mulvania v. Sheriff of Rock Island County,* 850 F.3d 849 (7th Cir. 2017), where arrestees were required to wear "white underwear or no underwear at all" while in custody of the detention facility. *Id.* at 851.

Finally, "nothing prevents an award of punitive damages for constitutional violations when compensatory damages are not available." *Calhoun v. DeTella,* 319 F.3d 936, 942 (7th Cir. 2003). This Court has consistently held that a civil rights plaintiff may recover punitive damages "even in the absence of actual loss to the plaintiff." *Spence v. Staras,* 507 F.2d 554, 558 (7th Cir. 1974); *Endicott v. Huddleston,* 644 F.2d 1208, 1217 (7th Cir. 1980). The Supreme Court endorsed this rule in *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 494 (2008), where it approvingly cited 4 Restatement (Second) of Torts § 908, Comment *c,* p. 465 for the proposition that "an award of nominal damages ... is enough to support a further award of punitive damages, when a tort ... is committed for an outrageous purpose."

### D. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants are not entitled to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, government officials such as police officers are not protected by qualified immunity if their conduct violates clearly established constitutional or statutory rights of which a reasonable person would have been aware. *Id.* In analyzing a claim of qualified immunity, the "court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was 'clearly established' at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 223-24 (2009). Here, there is a genuine issue of material fact, as argued above, as to whether Defendants held an objectively reasonable belief that they were in imminent danger and in fact Officer Steven Davis stated he did not believe he was in danger-he was 6'4" and 280 pounds and Plaintiff was 6'1", 160 pounds.

### CONCLUSION

For the foregoing reasons, Defendants' motion should be denied and this case should be tried to a jury.

Respectfully Submitted,

By: /s/ Timothy J. Deffet
Counsel for Plaintiff

ARDC#6255823
Timothy J. Deffet
The Law Office of Timothy J. Deffet
5875 N. Lincoln Ave. #231
Chicago, IL 60659
tim@timdeffetlaw.com
Tel: 773-627-4719