UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES ALLEN, | ) |
| Plaintiff, | ) |
| v. | ) 15 C 7702 |
| CITY OF CHICAGO, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Now before the Court is the Defendants' motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.1. For the following reasons, the Court grants the Defendants' motion.

## BACKGROUND

For purposes of this motion, the Court recites the following facts from the record. The facts are undisputed unless otherwise noted.

Plaintiff Charles Allen ("Allen") is a Chicago resident. Defendant Officers Kenhasa Martin ("Officer Martin"), Angela B. Cowart-Smith ("Officer Cowart-Smith"), Steven A. Davis ("Officer S. Davis"), Mark H. Davis ("Evidence Technician M. Davis"), Allen Smith ("Detention Aide Smith"), Eric Medina ("Officer Medina"), Stanley L. Williams ("Sergeant Williams"), Daniel Corral ("Officer Corral"), Martin J. Tannehill ("Lieutenant Tannehill"), Francis J. Heslin ("Detective Heslin"), Robert D.

Watkins ("Officer Watkins"), Eric L. Johnson ("Detention Aide Johnson"), Roy A. Boffo ("Sergeant Boffo"), Fred J. Marcellino ("Sergeant Marcellino"), and Vance E. Bonner ("Sergeant Bonner") (collectively, "Defendants") were employed by Defendant City of Chicago ("the City"), a municipal corporation, at all relevant times.

On July 21, 2014, an individual called 9-1-1 to request help at 8101 S. Maryland Avenue in connection with an alleged domestic battery. In response, the Office of Emergency Management and Communication ("OEMC") dispatched Beat 632, Officer S. Davis, to the scene at 23:00:02. Dispatch then called to request backup for Officer S. Davis, as he was without a partner that evening. Officer Cowart-Smith responded that Beat 642 was available, and she and Officer Martin were assigned as the assist at 23:00:19.

At approximately 23:30:26, Officer S. Davis notified dispatch that the officers were going to apartment 203. Sergeant Williams, Beat 610, heard the calls on the radio and responded to the scene as the Beat Sergeant.

The officers arrested Allen at 23:32:00. During the arrest, the officers tased Allen and deployed OC spray, more commonly referred to as pepper spray. At some point in the apartment, Allen passed out and has no recollection of the events that occurred until he woke up in the police station the following morning.

After Allen's arrest, Officer Cowart-Smith called over the radio that there was an emergency at 23:40:05. Seven seconds later, she requested a "wagon" and an ambulance. At 23:41:10, Officer Cowart-Smith reiterated over the radio, "We need an

2

ambulance, get it over here. We need the wagon and an ambulance for this offender." Dispatch responded to ask what type of injuries they had on scene, and Officer Cowart-Smith stated at 23:41:50, "Taser, he got tased."

At 23:42:28, Emergency Medical Services, Ambulance 24 was dispatched to the scene. The ambulance arrived on scene by 23:46:51. However, the parties dispute whether the paramedics provided treatment on the scene.

At 00:02:02, dispatch assigned Beat 631R, Officers Medina and Corral, to respond to the scene. At 00:03:25, the ambulance returned to being "in service," meaning that the paramedics completed the call and may be assigned a new job.

Evidence Technician M. Davis arrived on scene at 00:17:01. He took photographs of the victim and apartment 203. Evidence Technician M. Davis had no interaction with Allen.

At 00:38:00, Officers Medina and Corral transported Allen to the 6th District. After transport, Officers Medina, Corral, and S. Davis, and Sergeant Williams did not have any further interaction with Allen. Officers Medina and Corral were cleared of the assignment at 00:58:35. Officer S. Davis was cleared from the assignment at 02:20:43, after completing a Tactical Response Report ("TRR") to document the use of force and submitting it to Sergeant Williams.

At 00:53:00, Detective Heslin of the Area South Special Victims Unit was assigned to this case. Upon assignment, Detective Heslin went to the scene to interview witnesses and the victim. Allen had already been transported from the scene by the

3

time Detective Heslin arrived. Detective Heslin did not interact with Allen until interviewing him at the hospital later that day.

At 01:23:06, Lieutenant Tannehill interviewed Allen. Lieutenant Tannehill stated that Allen never requested medical treatment during this interview. He had no further interactions with Allen after the interview.

Once arriving back to the station, Officer Martin completed at TRR and submitted it for Sergeant Williams' review at 02:04:27. Officer Martin then worked with Officer Cowart-Smith to draft an arrest report. Officer Cowart-Smith submitted the arrest report at 03:17:00. Sergeant Marcellino reviewed the arrest report at 03:20:00 and approved probable cause for the charges. He never observed or spoke with Allen during the events on July 21 and 22. After receiving Sergeant Marcellino's approval, Officers Martin and Cowart-Smith were cleared from the assignment at 03:40:14.

Sergeant Boffo was working as a sector sergeant in the 6th District starting at 05:00:00 on July 22, 2014. Officer Watkins was the lockup keeper in the 6th District on July 22, 2014, starting at 05:30:00. Starting at 06:00:00, Detention Aides Johnson and Smith began their shifts in the 6th District lockup.

Once Allen woke up in his holding cell on July 22, 2014, lockup personnel let him wash his eyes out with water. Allen was then fingerprinted by lockup personnel at 07:58:00. During his fingerprinting, Allen told lockup personnel that his chest and knee hurt. Allen told them that he had been tased and lifted up his shirt to show Officer Watkins the marks on his stomach from the taser prongs.

4

After being informed of this injury, lockup personnel sent for Sergeant Boffo, who arrived within fifteen minutes. Sergeant Boffo reviewed Allen's paperwork and stated, "not on my watch." Sergeant Boffo arranged for Allen to be transported to the hospital in about fifteen minutes. Prior to that interaction, Sergeant Boffo had not spoken to or seen Allen and had no reason to believe he was injured.

Allen arrived at Little Company of Mary Hospital at approximately 10:46:00. He saw the triage nurse at 11:10:00. After evaluation, Allen's vital signs were normal, and he was designated at "Fast Track," meaning that his injuries were non-urgent.

At 12:00:00, Doctor Barry Lewis ("Dr. Lewis") saw Allen in the emergency room. Allen told Dr. Lewis that he had been tased and was experiencing numbness in his left hand and fingers. He explained that in March 2014, he was stabbed in his left forearm and experienced pain and numbness in his left hand ever since. Based on that information, Dr. Lewis found that Allen had a "chronic pain syndrome or injury." The parties dispute whether Dr. Lewis opined that the tasering exacerbated Allen's stab-related injuries.

Dr. Lewis recommended that Allen take Motrin, apply ice, and follow up with his primary care physician. At approximately 12:13:00, Allen was discharged as "fit for confinement."

Sergeant Bonner approved charges against Allen at approximately 16:03:00. Sergeant Bonner had no interactions with Allen on either July 21 or 22.

5

Based on these interactions, Allen filed his original complaint on September 21, 2015. He filed the operative complaint on July 20, 2016, alleging excessive force and failure to intervene, failure to provide medical care, two state law tort claims, and a *respondeat superior* claim against the City. Allen voluntarily dismissed his state law claims, and the Court dismissed his *respondeat superior* claim, leaving only Count I for excessive force and failure to intervene and Count IV for failure to provide medical care. The Defendants now move the Court to grant summary judgment in their favor as to the remaining counts.

## LEGAL STANDARD

In considering a motion for summary judgment, the Court construes all facts and draws all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant. *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court considers the "record as a whole." *Morgan v. Harris Trust & Sav. Bank of Chi.*, 867 F.2d 1023, 1026 (7th Cir. 1989).

## DISCUSSION

The Defendants seek summary judgment on Count I as to Officers Medina and Corral and on Count IV as to all of the officers. The Court evaluates each argument in

6

turn.

**I. Excessive Force and Failure to Intervene**

Count I of the complaint alleges that the arresting officers are liable for the use of excessive force and the failure to intervene. An officer may be liable for the use of excessive force if "judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012). Even if an officer did not personally use excessive force in effectuating an arrest, an officer may still be liable for the failure to intervene if he or she "had reason to know…that excessive force was being used…and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

The Defendants contend that the Court should grant summary judgment on Count I as to Officers Medina and Corral because they were not present at the time the arresting officers allegedly used excessive force. The undisputed facts show that Allen had been tased before 23:41:50, when Officer Cowart-Smith told dispatch what injuries were present at the scene. Allen also admits that Officers Medina and Corral were not dispatched to the scene until 00:02:07, more than twenty minutes after the alleged injuries occurred. Given that both of the claims alleged in Count I require an officer's presence as a necessary condition of liability, no reasonable jury could find for Allen with respect to Officers Medina and Corral. Accordingly, the Court grants the Defendants' motion for partial summary judgment as to Count I.

7

## II. Failure to Provide Medical Care

It is undisputed that the Defendants provided Allen with medical care during his time in custody. Instead, Allen alleges that the Defendants' delay in providing him medical care was objectively unreasonable. To determine whether an officer's actions regarding the provision of medical were unreasonable, the Court must balance the following factors: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Additionally, Allen must show that the officer's response caused the harm of which he complains. *Horton v. Pobjecky*, 883 F.3d 941, 953 (7th Cir. 2018).

### *i. Officers S. Davis, Martin, and Cowart-Smith, and Sergeant Williams*

The Court's balancing of the *Ortiz* factors varies depending on each Defendant's interaction with Allen. The Court begins with the Defendants present during Allen's arrest—Officers S. Davis, Martin, and Cowart-Smith, and Sergeant Williams.

Those officers had notice of Allen's injuries, as they effectuated his arrest involving the use of force and resulting in Allen passing out. The officers subsequently acknowledged his need for medical treatment, calling an ambulance to the scene. However, the parties dispute whether the paramedics provided treatment to Allen at the scene. Indeed, the ambulance report states that their services were not needed, and the police handled the emergency.

Further, the officers were present when Allen was transported back to the 6th District, rather than the hospital. The parties do not indicate an administrative, penological, or investigatory concern that would require Allen to be taken to the police station prior to being taken to the hospital. Accordingly, the Court cannot confidently state that the officers' response was objectively reasonable.

*ii. Officers Medina and Corral*

Officers Medina and Corral were assigned to respond to the scene at 00:02:07, approximately ninety seconds before the ambulance returned to being "in service." Once they arrived on the scene and saw the ambulance present, they would not be on notice that Allen needed medical attention. It would be objectively reasonable for them to conclude that Allen had received medical care, given that there were paramedics present on the scene. Operating under that information, Officers Medina and Corral played the limited role of transporting Allen to the police station. They had no further interaction with Allen once they got to the police station. Their entire involvement in the case concluded in less than an hour, during which time they had reason to believe that Allen had received medical attention. Therefore, the Court grants summary judgment on Count IV as to Officers Medina and Corral.

*iii. Evidence Technician M. Davis*

Evidence Technician M. Davis arrived on scene at 00:17:01. While this occurred before Allen was transported from the scene, the parties do not dispute that Evidence Technician M. Davis had no interaction with Allen. Rather, his role was limited to

9

taking photographs of the victim and the scene. Accordingly, he would have no reason to know of Allen's injury or any urgency regarding his need for medical attention. Therefore, the Court grants summary judgment on Count IV as to Evidence Technician M. Davis.

### iv. Detective Heslin

Detective Heslin was assigned to the case at 00:53:00, approximately fifteen minutes after Allen was transported from the scene of the arrest. By the time Detective Heslin arrived, Allen was not present. Detective Heslin's first interaction with Allen was at the hospital, where Allen was being treated. Given that their interaction did not occur until Allen had received medical treatment, the Court grants summary judgment on Count IV as to Detective Heslin.

### v. Sergeant Marcellino

The parties do not dispute that Sergeant Marcellino never observed or spoke with Allen on the two dates in question. Therefore, he had no first-hand notice of Allen's injury or his need for medical attention. Sergeant Marcellino's involvement was limited to reviewing the arrest report on the morning of July 22, 2014 and approving probable cause for the charges. The arrest report indicated that an ambulance was called to the scene of the arrest and that Allen received treatment. Accordingly, Sergeant Marcellino's response was objectively reasonable, and the Court grants summary judgment on Count IV as to him.

*vi. Lieutenant Tannehill*

Lieutenant Tannehill's interactions with Allen are limited to his post-arrest interview, which occurred at the police station at approximately 01:23:06. Lieutenant Tannehill states that Allen never requested medical treatment during this interview, which would have put him on notice of Allen's need for medical attention. Lieutenant Tannehill had no further interactions with Allen after the interview concluded. Given that Allen's complained of injuries would not be visible to Lieutenant Tannehill in an interview, he would not have adequate notice of the need for medical treatment absent a request. Without knowledge of such a need, the Court finds Lieutenant Tannehill's actions objectively reasonable and grants summary judgment on Count IV as to him.

*vii. Sergeant Boffo, Officer Watkins, and Detention Aides Smith and Johnson*

Sergeant Boffo, Officer Watkins, and Detention Aides Smith and Johnson all encountered Allen for the first time on the morning of July 22, 2014. Allen told lockup personnel that his chest and knee hurt, lifting up his shirt to show Officer Watkins where he was tased. Once notified of Allen's injuries, lock up personnel sent for Sergeant Boffo, who arrived within fifteen minutes. After reviewing Allen's paperwork, Sergeant Boffo stated, "not on my watch," and secured an ambulance for Allen. Within approximately fifteen minutes, the ambulance transported Allen to the hospital. Given lockup personnel and Sergeant Boffo's promptness and responsiveness, the Court finds that their actions were objectively reasonable and grants summary judgment on Count IV as to each of these Defendants.

*viii. Sergeant Bonner*

Sergeant Bonner's first interaction with Allen's case took place at 16:03:00, well after Allen had been taken to the hospital for treatment. As Allen had already been treated by the time Sergeant Bonner became involved in his case, a response regarding a need for medical treatment was moot. Accordingly, the Court grants summary judgment on Count IV as to Sergeant Bonner.

*ix. Qualified Immunity*

The Defendants next argue that "[e]ven if Plaintiff was able to make out any technical constitutional violation, summary judgment is still proper because Defendants are entitled to qualified immunity." This doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Essentially, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Thus, "[p]olice officers are entitled to rely on existing lower court cases without facing personal liability for their actions." *Pearson*, 555 U.S. at 244–45.

The constitutional right at issue is a pre-arraignment detainee's Fourth Amendment right to medical treatment after the use of force during an arrest. More specifically, Allen appears to allege that he is constitutionally entitled to receive medical treatment prior to being taken to and held at the police station. However, no

case has "clearly established" that right. In fact, the Northern District of Illinois recently asserted the opposite conclusion. *See Allen v. City of Des Plaines*, 262 F.Supp.3d 727, 732–33 (N.D. Ill. 2017) (granting summary judgment on a Fourth Amendment failure to provide medical care claim where the officers tased the plaintiff during the arrest and took her to the police station prior to bringing her to the hospital). Given that the constitutional right at issue was not and is still not "clearly established," the officers are entitled to qualified immunity for their response to Allen's medical needs. Therefore, summary judgment is appropriate on Count IV as to all the officers.

## CONCLUSION

For the aforementioned reasons, the Court grants the Defendants' partial motion for summary judgment. It is so ordered.

Dated: 7/10/2019

_____
Charles P. Kocoras
United States District Judge